**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **STURBRIDGE YANKEE WORKSHOP** | ) | **Case No. 20-20043** |
| **CORPORATION,** | ) | |
| | ) | |
| Debtor | ) | |

**AMENDED PLAN OF REORGANIZATION**
**DATED SEPTEMBER 21, 2020**

The above-captioned debtor, Sturbridge Yankee Workshop Corporation (the "Debtor"), proposes this Amended Plan of Reorganization dated September 21, 2020, pursuant to 11 U.S.C § 1121 of the Bankruptcy Code (the "Plan").

**INTRODUCTION**

On February 14, 2020 (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, thereby initiating the above referenced Chapter 11 case of the Debtor. As a result of the filing, the Debtor became a debtor-in-possession with authority to operate its business pursuant to §§ 1107 and 1108 of the Code.

The Debtor is the successor to a sixty-plus year old, Maine-based business. It is a Maine corporation engaged in the business of selling home goods, furniture, and furnishings to the public, including classic American home furnishings, such as Shaker accent tables, Windsor chairs, nostalgic signs, folk art prints, durable braided rugs, cottage curtains and country kitchen accents, through retail catalogue and internet sales. It fulfills over 100,000 orders per year and ships product to customers across the United States.

The intensely competitive nature of this business caused the Debtor, prior to the commencement of this case, to incur substantial trade and secured debt in an effort to compete with internet retail giants such as Amazon, Wal-Mart, and many others. On June 1st, the Debtor filed its first plan of reorganization (the "Original Plan"). Following negotiations with the Committee (as that term is defined below at Article I, § 1.15), the Debtor revised the terms of the Original Plan, resulting in this Plan.

The purpose of the Plan of Reorganization is to adjust and reduce the Debtor's balance sheet liabilities, both as to secured debt and unsecured trade debt, so as to better position the Debtor to compete in the market in which it currently operates. By doing so, the Debtor also hopes to maintain the employment of its thirty-five employees, maintain its continued ability to serve its many loyal customers, and provide the maximum possible dividend to holders of prepetition claims, while at the same time, remaining a continuing and viable customer for their goods and services.

This Plan provides for the settlement and satisfaction by the Debtor of all Classes of Claims identified in the Plan in the amounts and over the timeframes set forth herein. The Plan also describes the means by which the Debtor intends to satisfy its obligations under the same.  In summary, the Debtor will obtain new investment from its existing owners, in the form of the write-off of a substantial portion of their pre-petition secured indebtedness.  With reduced debt, and a revised business plan, the Debtor will then devote its projected operating profits to payment of a dividend to unsecured creditors of $275,000.00 for distribution *pro rata* to the holders of allowed general unsecured creditors, an amount which, in the Debtor's view, substantially exceeds the likely recovery of creditors in a liquidation of the Debtor.  Reference is made to the provisions of Articles III, IV, V, VI, VII, and VIII of this Plan for a more detailed statement of the terms of settlement and satisfaction of all Classes of Claims, and the means for doing so.

The Debtor believes that the Plan provides for the fair and equitable treatment of all creditor Claims and that the Plan is in the best interest of all creditors, and other parties-in-interest.

## *ARTICLE I*

## **DEFINITIONS**

General.  Unless the context otherwise requires and/or unless defined elsewhere in the Plan, the following terms shall have the following meanings when used in initially capitalized form in this Plan.  Such meanings shall be equally applicable to both the singular and plural forms of such terms.  Any term used in initially capitalized form in this Plan that is not defined herein but that is defined in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code.

1.1  Administrative Claim shall mean a Claim arising and allowable under § 503(b) of the Bankruptcy Code with respect to the Debtor, including charges against the Debtor's estate under 28 U.S.C. § 1930.

1.2  Allowed with respect to a Claim or Interest other than a Fee Claim, shall mean any Claim or Interest (a) that is the subject of a timely filed proof of claim, or (b) any Claim or Interest that has been listed in the schedules filed with the Bankruptcy Court by the Debtor pursuant to Bankruptcy Code § 521 and is not listed therein as disputed, unliquidated, or contingent; and, in each such case as to which either (i) no objection to the allowance thereof or other similar pleading has been filed within the applicable time period set forth in the Plan, or (ii) an objection or other similar pleading has been filed and the Claim or Interest has been allowed by a Final Order but only to the extent so allowed.  To the extent that all or a portion of a Claim is not Allowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is not Allowed.

1.3 <u>Allowed Amount</u> shall mean the amount of any Allowed Claim or Allowed Interest.

1.4 <u>Assets</u> means all property that would be property of the Debtor and the Debtor's estate under § 541 of the Bankruptcy Code, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, all Causes of Action and all proceeds of and recoveries on Causes of Action, all accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interest in real estate.

1.5 <u>Bankruptcy Code</u> shall mean 11 U.S.C. §§ 101 *et seq.*, as in effect with respect to the Case on the Petition Date.  All Code references herein are to the Bankruptcy Code in effect as of the Petition Date, unless otherwise stated.

1.6 <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court for the District of Maine, or any other court with jurisdiction over the Case.

1.7 <u>Bar Date</u> shall mean the date, if any, established by the Bankruptcy Court as the deadline for filing proofs of claims or interests in the Case.

1.8 <u>Binnie</u> shall mean William Binnie, an individual, maintaining a business office in Portsmouth, New Hampshire

1.9 <u>Carlisle</u> means Carlisle Capital Corporation, a Delaware corporation with its principal place of business in Portsmouth, New Hampshire.

1.10 <u>Case</u> shall mean the Chapter 11 Case of the Debtor now pending in the Bankruptcy Court pursuant to Chapter 11 of the Bankruptcy Code.

1.11 <u>Cash</u> shall mean payment, including by check, issued by or on behalf of the Debtor with respect to any payment of collected funds required to be made pursuant to the Plan.

1.12 <u>Cause of Action</u> shall mean all claims and causes of action now owned or hereafter acquired by the Debtor and/or its estate, whether arising under the Bankruptcy Code or other federal or state law, including, without limitation, Chapter 5 Causes of Action

1.13 <u>Chapter 5 Causes of Action</u> shall mean all Causes of Action (as that term is defined *infra* at § 1.11 arising under Chapter 5 of the Bankruptcy Code

3

(including, but not limited to, causes of action arising under 11 U.S.C. §§ 544, 547, 548, 549, 550, and 553).

1.14   <u>Claim</u> shall mean a claim, as defined in § 101(5) of the Bankruptcy Code, against the Debtor.

1.15   <u>Committee</u> shall mean the Official Committee of Unsecured Creditors appointed in this case by the United States Trustee on or about March 17, 2020.

1.16   <u>Confirmation Date</u> shall mean the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

1.17   <u>Confirmation Order</u> shall mean the Order (which need not be a Final Order) confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

1.18   <u>Effective Date</u> shall mean the date determined in accordance with Article VI of the Plan.

1.19   <u>Encumbrances</u> shall mean all liens, encumbrances, mortgages, hypothecations, pledges, and security interests of any kind whatsoever.

1.20   <u>Executory Contract</u> shall mean an executory contract within the meaning of § 365 of the Bankruptcy Code.

1.21   <u>Fee Claim</u> shall mean the Administrative Claim of a professional person for compensation and/or reimbursement of expenses.

1.22   <u>Final Order</u> shall mean an Order of any court, administrative agency or other tribunal as entered on its docket as to which (a) the time to appeal or petition for rehearing or *certiorari* has expired and as to which no appeal or motion for rehearing or petition for *certiorari* has been timely filed or taken, (b) if such an appeal or motion for rehearing or petition for *certiorari* has been timely filed or taken, such order or judgment has been affirmed by the highest tribunal in which review was sought or such appeal, motion for rehearing or petition for *certiorari* was dismissed or otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.23   <u>Order</u> shall mean an order of the Bankruptcy Court.

1.24   <u>Petition Date</u> shall mean February 14, 2020.

4

1.25   <u>Plan</u> shall mean this Plan of Reorganization, dated September 21, 2020, as it may be amended or modified by the Debtor from time to time, together with all exhibits, schedules and other attachments hereto, as the same may be amended or modified by the Debtor from time to time.

1.26   <u>Plan Support Agreement</u> shall mean the Settlement and Plan Support Agreement executed by the Debtor and the Committee.

1.27   <u>Post-Petition Bar Date</u> shall mean the date that is forty-five (45) days after the Effective Date.

1.28   <u>Prime Rate</u> shall mean the annualized rate of interest designated as the "Prime Rate" as published in the Money Rates Section of the Wall Street Journal, Eastern Edition, as of the Effective Date.  If the Prime Rate shall no longer be published in the Money Rates or any other section of The Wall Street Journal, then the holder(s) of an obligation payable with interest at the Prime Rate pursuant to this Plan shall have the right, exercising reasonable judgment, to substitute a new method for determining a comparable per annum interest rate to be charged by the holder(s) and such rate of interest determined by such method shall become the Prime Rate for the purpose of this Plan and any obligation issued pursuant to this Plan.

1.29   <u>Priority Claim</u> shall mean an Unsecured Claim arising before the Petition Date and allowable under §§ 507(a)(2) through 507(a)(9) of the Bankruptcy Code.

1.30   <u>Secured Claim</u> shall mean a claim that is secured by a perfected (or similarly binding) Encumbrance on any of the Debtor's assets, to the extent provided in 11 U.S.C. § 506 of the Bankruptcy Code.

1.31   <u>SREC</u> means Sturbridge Real Estate Corporation.

1.32   <u>Unsecured Claim</u> shall mean a Claim which arose before the Petition Date and which is not secured by any interest in any property of the Debtor's estate, and shall include a Claim which arises from the rejection of an Executory Contract or Unexpired Lease, within the meaning of § 365 of the Bankruptcy Code; provided, however, that in order to be an Unsecured Claim, such claim must be evidenced by a proof of claim which has been timely filed by the holder of the Claim (whether or not such proof of claim has been Allowed) prior to the Bar Date, or such Claim must be described on Schedule F filed by the Debtor and not noted as unliquidated, contingent or disputed on such Schedule (whether or not such claim is deemed Allowed).

## *ARTICLE II*

## **TREATMENT OF NON-CLASSIFIED CLAIMS**

2.1     <u>Administrative Claims</u>.  Except as otherwise provided by the Plan or as otherwise agreed between the Debtor and the holder of an Allowed Administrative Claim against the Debtor, each holder of an Allowed Administrative Claim shall be paid in full upon the later of the Effective Date and the date which is thirty (30) days after the date upon which such Administrative Claim becomes an Allowed Administrative Claim.

2.2     By agreement with the Committee, upon entry of a Final Order confirming the Plan, which Plan shall incorporate the Plan Support Agreement, the Committee shall not seek or assert an Administrative or any other Claim for payment of fees to, or reimbursement of expenses incurred by, professional persons employed by the Committee and related to services rendered from and after entry of a Final Order confirming the Plan. Provided, however, that this limitation on payment of Administrative or other Claims of professional persons employed by the Committee shall not apply (a) if a Final Order confirming this Plan, or any Plan amended or modified with the consent of the Committee, is not entered by November 15, 2020; and (b) shall not apply with respect to fees for services rendered, or expenses incurred following occurrence of a default under this Plan or any amended or modified plan filed with the consent of the Committee that materially and adversely affects general unsecured creditors.

2.3     <u>Priority Claims</u>.  Except as otherwise agreed by the Debtor and the holder of an Allowed Priority Claim against the Debtor the holders of Allowed Priority Claims, shall, in the sole discretion of the Debtor, be paid either (a) in full upon the later of the Effective Date and the date which is thirty (30) days after the date upon which such Priority Claim becomes an Allowed Priority Claim; or (b) in the case of priority claims described in § 507(a)(8) of the Bankruptcy Code, pursuant to the terms of § 1129(a)(9)(C).

2.4     <u>Bankruptcy Fees</u>.  Any Administrative Claim for outstanding fees incurred in the Case pursuant to 28 U.S.C. § 1930(a)(6) and due and payable as of the Effective Date shall be paid in full on the Effective Date.  Thereafter, the Debtor shall pay any and all fees lawfully due and payable under 28 U.S.C. § 1930(a)(6) with respect to the Case in the ordinary course without necessity of allowance by the Court until entry of an Order closing the Case.

## *ARTICLE III*

## **DESIGNATION OF CLASSES OF CLAIMS**

Claims that are required or permitted to be classified under Bankruptcy Code § 1123(a)(1) are hereby classified into the following classes:

3.1     <u>Class One</u> shall consist of all Claims, secured and unsecured, of any kind or nature, held by Binnie.

3.2     Class Two shall consist of all Claims, secured and unsecured, of any kind or nature, held by Carlisle.

3.3     Class Three shall consist of shall consist of the holders of all Secured Claims of any kind or nature not included in Classes One and Two, including secured claims arising from capital leases and other equipment financing transactions.

3.4     Class Four shall consist of the holders of all Allowed Unsecured Claims, including Allowed Unsecured Claims arising from the rejection of an executory contract or unexpired lease.

3.5     Class Five shall consist of the holders of all equity interests in and to the Debtor, including equity interests evidenced by any class of stock issued by the Debtor.

## *ARTICLE IV*

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

All classes of Claims are impaired under this Plan, within the meaning of Bankruptcy Code § 1124 and the treatment of each of these classes of Claims is as set forth below.

4.1     Class One. The holder of the Class One Claim shall, in concert with the holder of the Class Two Claim, cause the secured portion of the claims in Class One and Two to be reduced by the aggregate amount of Two Hundred and Fifty Thousand Dollars ($250,000), in such proportion as to Class One and Class Two as the holders of claims in such classes may agree upon, in a writing, to be filed with the Court, on or prior to the Effective Date. The holder of the Claims in Classes One and Two shall permanently and irrevocably waive repayment of the amount by which their secured claims have been reduced in accordance with the preceding sentence. The balance of the claims in Class One shall be paid and satisfied upon such terms as may be agreed upon by the Class One creditor and the Debtor. The Class One Claim is impaired under the Plan and the holder of such Claim is entitled to vote as a class to accept or reject this Plan. Class One Claims are impaired.

4.2     Class Two. The holder of the Class Two Claim shall, in concert with the holder of the Class One Claim, cause the secured portion of the claims in Class One and Two to be reduced by the aggregate amount of Two Hundred and Fifty Thousand Dollars ($250,000), in such proportion as to Class One and Class Two as the holders of claims in such classes may agree upon, in a writing, to be filed with the Court, on or prior to the Effective Date. The holder of the Claims in Classes One and Two shall permanently and irrevocably waive repayment of the amount by which their secured claims have been reduced in accordance with the preceding sentence. The balance of the claims in Class Two shall be paid and satisfied upon such terms as may be agreed upon by the Class Two

creditor and the Debtor.  The Class Two Claim is impaired under the Plan and the holder of such Claim is entitled to vote as a class to accept or reject this Plan.

4.3    Class Three.  Holders of claims in Class Three shall receive full payment of their Claims by payment of the same over a term of five (5) years, in 60, consecutive, equal payments of principal and interest, at the rate of 3.5% per annum, with the first payment being made on the first day of the month following the Effective date, and with successive payments being made on the first day of each succeeding monthly, or in accordance with any other written agreement entered into between the holder of a Class Three claim and the Debtor.  Class Three Claims are impaired.

4.4    Class Four.  Class Four claims are impaired.

(a) Each holder of a Class Four Claim shall receive payment of a *pro rata* share of the sum of $275,000, such sum, is referred to hereinafter as the "Dividend".  Each holder of a claim in Class Four shall receive payment of that portion of the Dividend that equals the portion of the total amount of Allowed Class Four claims held by each such holder of a Class Four Claim (such portion being referred to hereinafter as the "*pro rata*" portion). Payment of the Dividend shall be made to holders of Allowed Class Four Claims, *pro rata,* as follows: (i) $50,000 shall be paid upon the Effective Date, together with the first quarterly payment described in the following subsection (ii) of this section; and (ii) the sum of $225,000, together with interest at the fixed rate of interest equal to the New York Prime Rate of interest, as reported in the Wall St. Journal on the Confirmation Date, shall be made in twenty-eight (28) equal, consecutive quarterly payments of the Dividend and interest, with the second quarterly payment being made on ninety (90) days after the date of the first quarterly payment referenced above, and with continuing successive quarterly payments being made until the Dividend and interest at the foregoing rate, has been paid in full.  The Debtor may prepay the Dividend at any time without penalty.

(b) Upon the occurrence of a Final Order confirming the Plan, the Committee, as such and not on behalf of any individual member or the holder of any Unsecured Claim, forever release, disclaim, and discharge the Debtor, holders of allowed secured claims against the Debtor, its landlord, and its current and former principals, agents, attorneys, representatives, employees, officers, members, directors, shareholders, successors, predecessors, assigns, and any other person acting on its behalf, including, but not limited to, Binnie, Carlisle (and any agent or representative thereof), and Gary Boisvert, from any and all debts, liabilities, obligations, claims, demands, agreements, promises, representations, warranties, complaints, suits, rights or causes of action, damages, attorneys' fees, penalties, interest, costs, injunctive relief, and/or any other relief available in law, equity, or administrative proceedings, whether known or unknown, knowable or unknowable, asserted or unasserted, direct or derivative, contingent or noncontingent, now existing or hereafter accruing, or liquidated or unliquidated, based on any actions or omissions that occurred on or before the Confirmation Date, and related to the conduct of the business, operations, and financing of the Debtor, *provided however*, that this paragraph does not release, disclaim, or discharge claims or obligations arising under this (i) this Plan;

8

(ii) the Plan Support Agreement; or (iii) any claims against the Debtor for claims arising from the Post-Petition supply of services and/or goods to the Debtor.

(c)  Upon the occurrence of a Final Order confirming the Plan, the Debtor forever releases, disclaims, and discharges the Committee, each of its members, and all holders of unsecured claims against the Debtor, and its and their respective current and former principals, agents, attorneys, representatives, employees, officers, members, directors, shareholders, successors, predecessors, assigns, and any other person acting on its behalf from any and all debts, liabilities, obligations, claims, demands, agreements, promises, representations, warranties, complaints, suits, rights or causes of action (including causes of action under Chapter 5 of the Bankruptcy Code), damages, attorneys' fees, penalties, interest, costs, injunctive relief, and/or any other relief available in law, equity, or administrative proceedings, whether known or unknown, knowable or unknowable, asserted or unasserted, direct or derivative, contingent or noncontingent, now existing or hereafter accruing, or liquidated or unliquidated, based on any actions or omissions that occurred on or before the Confirmation Date *provided however*, that this paragraph does not (a) limit the right of the Debtor to object to the allowed amount of any claim made by the holder of an unsecured claim, or (b) release, disclaim, or discharge claims or obligations arising under this Agreement or under the Amended Plan, or (c) release claims of the Debtor against holders of unsecured claims with respect to goods and services provided to the Debtor, or contracts entered into the Debtor, on or after the Petition Date.

(d)  The terms and provisions of the Plan Support Agreement, as approved by Order of the Bankruptcy Court, shall be incorporated into this Plan, ratified and confirmed, with the same force and effect as if set forth herein.

4.5  Class Five.  All equity interests in Class Five shall be cancelled and terminated on the Effective Date.  Class Five equity interests are impaired.

## *ARTICLE V*

## **MEANS FOR EXECUTION OF THE PLAN**

5.1  The Debtor shall implement the Plan, and shall make Plan Distributions and other payments as set forth herein, to holders of Allowed Claims, using the following sources of funds:

(a)  cash on hand;

(b)  income generated by the Debtor's ongoing business operations; including income generated by sales and the collection of retail accounts receivable;

(c)  borrowed funds from new working capital and/or fixed asset loans to be obtained by the reorganized Debtor;

(d)  assumption or rejection of certain contract and lease obligations;

(e)  One Hundred Thousand (100,000) Shares of the Debtor's common stock, par

value $.01 per share, shall be issued to the holders of claims in Classes One and Two, or to their nominees.  Each holder of claims in Classes One and Two, or their respective nominees, shall receive that number of shares which bears the same proportion to 100,000 shares as the amount of secured debt waived by such holder bears to the total of $250,000 of total secured claims waived by such holders pursuant to Article IV of this Plan; and

(f)   The Debtor may, in its sole discretion, issue additional shares of its common stock, $.01 par value, for such consideration as it may deem appropriate, including to any employee or director of the Debtor in consideration of services rendered and to be rendered.

## *ARTICLE VI*

## **THE EFFECTIVE DATE**

6.1   <u>Effective Date</u>.  Unless the Confirmation Order has been stayed prior thereto, the Effective Date shall be the sixtieth (60th) day following the Confirmation Date, provided that such date is not a weekend day or a holiday.  If such date falls on a weekend date or a holiday, the Effective Date shall be the next day which is not a weekend day or a holiday.

## *ARTICLE VII*

## **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

7.1   <u>Assumption/Rejection of Certain Executory Contracts and Unexpired Leases</u>.

(a)  On the Confirmation Debt, the Debtor shall be deemed to have assumed its lease with Sturbridge Real Estate Corporation, and in conjunction therewith, the Debtor shall be deemed to have complied with all of the requirements of Section 365 of the Bankruptcy Code.

(b)  Except as set forth in subsection (a) above, and unless the subject of a motion to assume an executory contract that is pending as of the Effective Date, or unless an executory contract is dealt with by an Order of this Court entered on or prior to the Effective Date, any and all executory contracts and unexpired leases of the Debtor that were entered into prior to the Filing Date shall be deemed rejected as of the Effective Date, if not earlier rejected by other orders of the Bankruptcy Court.  If an executory contract is the subject of a motion to assume as of the Effective Date, then such executory contract shall be assumed or rejected in accordance with an order entered into by the Court with respect to such motion, or in accordance with an agreement of the Debtor and the non-debtor party(ies) to such executory contract.

(c)  The non-Debtor party to any such rejected contract or lease shall be required to assert a claim for damages from such rejection in accordance with Section 7.2 hereof.

7.2  <u>Damages.</u>  Any claim for damages arising from the rejection or deemed rejection of an executory contract or unexpired lease must be filed on or before the thirtieth day following the Effective Date, or by such other date as may be specified by Order of the Bankruptcy Court and, if not so filed, will be deemed disallowed, discharged, and forever barred from receiving any distribution under this Plan.  All Allowed Claims arising from the rejection of executory contracts and unexpired leases shall be classified as Allowed Unsecured Claims in Class Four of the Plan.

## *ARTICLE VIII*

## <u>MISCELLANEOUS PROVISIONS</u>

8.1  <u>Legally Binding Effect</u>.  The provisions of the Plan shall bind all holders of Claims and Interests, whether or not they accept the Plan.

8.2  <u>Claims Subject to Allowance</u>.  Notwithstanding any other provision of the Plan, no distribution shall be made on account of any Claim until such Claim is Allowed.

8.3  <u>Prepetition Claim and Amendments</u>.  Each Claim as to which a proof of claim was required to be filed on or before the Bar Date and as to which a proof of claim was not filed on or before the Bar Date shall not under any circumstances become an Allowed Claim.  In no event shall the Allowed Amount of any Claim against the Debtor exceed the amount set forth in a proof of claim therefor filed on or before the Bar Date unless the claimant in its proof of claim expressly reserved the right to amend such proof of Claim, in which case any such amended proof of claim must be filed by the Confirmation Date.  No Order allowing or disallowing a Claim may be reconsidered, pursuant to the Bankruptcy Code Section 502(j) or otherwise, so as to increase the Allowed Amount thereof after entry of the Confirmation Order.

8.4  <u>Objections to Prepetition Claims and Interests</u>.  Claims and Interests that arose prior to the Petition Date, and which have not been scheduled by the Debtor as contingent, unliquidated or disputed, or as to which a valid proof of claim or interest has been filed on or before the Bar Date, shall be allowed in full, unless an objection to such Claim or Interest is filed on or before the Effective Date.  Claims that have been objected to and not allowed shall have no right to vote with respect to the acceptance or rejection of this Plan except as otherwise ordered by the Court.

8.5  <u>Bar Date for and Objection to Post-Petition Claims</u>.  Any Claim entitled to priority under Bankruptcy Code § 503(a) arising before the Confirmation Date and still outstanding 60 days thereafter, except for a Fee Claim, shall be forever barred unless it is the subject of a proof of claim filed with the Bankruptcy Court on or before the Post-Petition Bar Date.  Any Claim that is the subject of such a proof of claim shall be Allowed in full unless an objection thereto is filed within 30 days after the Post-Petition Bar Date or such other date as is provided by Order upon motion of the Debtor.

8.6   <u>Means of Cash Payment</u>.  Cash payments made pursuant to the Plan will be in United States funds, including by check or wire transfer or such other commercially reasonable manner as the Debtor shall determine.

8.7   <u>Debtor's Assets and Causes of Action</u>.  On the Effective Date of the Plan, all property of the Debtor's bankruptcy estate  shall vest in the Debtor, subject only to liens and encumbrances that are not discharged and that are continued in full force and effect pursuant to this Plan.  On and after the Confirmation Date, and subject to compliance with the terms of this Plan, the Debtor may, without further approval of the Bankruptcy Court, use, sell, assign, transfer, abandon, settle, or otherwise dispose of at a public or private sale any of the Debtor's Assets for the purpose of liquidating and converting such assets to cash, making distributions, and fully consummating the Plan.

8.8   <u>Discharge</u>.  To the fullest extent allowable under the Bankruptcy Code, the Debtor shall, as of the Confirmation Date, have the full benefit of the discharge provided by Bankruptcy Code Section 1141(d).  Without limiting the generality of the foregoing, and except as provided in the Plan, the Debtor shall be permanently released and discharged from all Claims liens, Encumbrances, and debts that arose before the Confirmation Date whether or not any such lien, Claim, Encumbrance or debt has been scheduled by the Debtor, a proof of claim has been filed or deemed filed, any such Claim is Allowed, or the holder of any such Claim has accepted the Plan; provided, however, that nothing herein shall release or discharge the Debtor with respect to its obligation to make the payments and to provide the other consideration which is described in this Plan.

8.9   <u>Release of Encumbrances</u>.  The entry of an order confirming this Plan shall constitute the immediate release and discharge of any contractual or statutory or judicial lien, security interest, mortgage or other encumbrance affecting property of the estate or property of the Debtor (the "<u>Encumbrances</u>"), unless this Plan or the Confirmation Order requires the continuation in effect of any of such Encumbrances.  Any holder of an Encumbrance that is discharged pursuant to this Plan shall, upon request of the Debtor, execute and deliver to the Debtor such documents and agreements, in recordable form, as are reasonably necessary to cause the discharge of record of any such Encumbrance.  In the event that any such holder fails and refuses to do so, then the Debtor may cause to be recorded a discharge of such Encumbrance.

8.10   <u>Injunction and Stay</u>.  Unless otherwise provided, all injunctions or stays provided for in the Case pursuant to §§ 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the close of the Case.  The entry of the Confirmation Order shall constitute a stay and injunction applicable to all persons, staying and enjoining the enforcement or attempted enforcement by any means of all liens, claims, Encumbrances, and debts discharged pursuant to Section 9.11 above.

8.11   <u>Modification of Confirmed Plan</u>.  After the Confirmation Date, the Debtor may modify the Plan under Bankruptcy Code § 1127 and may remedy any defect or omission or reconcile any inconsistency in the Plan or in the Confirmation Order in such

manner as may be necessary or appropriate to carry out the purposes and intent of the Plan, so long as the interests of holders of Claims and Interests are not materially and adversely affected thereby.

8.12   Substantial Consummation.   The Plan shall be deemed to have been substantially consummated when all of the requirements of Bankruptcy Code § 1101(2) shall have been satisfied.

8.13   Closing of Case.  The Case shall be deemed closed at such time as the Order closing the Case pursuant to Bankruptcy Code § 350 has been entered by the Bankruptcy Court on the motion of the Debtor, and the Order becomes a Final Order.

8.14   Retained Jurisdiction.  The Bankruptcy Court shall retain jurisdiction over the Case after the Confirmation Date for the following purposes:

(a)   to hear and determine objections to claims;

(b)   to hear and determine any disputes arising under the Plan, its implementation and execution of any necessary documents thereunder, and any requests to amend, modify, or correct the Plan, provided that such matters are brought before the Court prior to the point of Substantial Consummation as that term is defined in Bankruptcy Code § 1101(2) of the Bankruptcy Code and by the Plan itself, and subject, further, to the restrictions set forth in Bankruptcy Code § 1127(b);

(c)   to grant extensions of any deadlines set forth in the order confirming this Plan as may be appropriate;

(d)   to enforce all discharge provisions under the Plan, including the provisions of § 8.9 of this Article;

(e)   to review and rule upon applications for compensation of professional persons; and

(f)   If at the time of the hearing confirming the Plan, the Debtor expects that a broader retention of jurisdiction will be sought, but is not in a position to request a specific enlargement, the Court may conditionally reserve the question of additional retained jurisdiction in the order confirming the Plan and shall set a time within which the Debtor shall file a motion on notice requesting retention of such additional jurisdiction as necessary, to be embodied in a supplemental order.

8.15   Dates.  Whenever the Plan requires the Debtor to make a distribution or take some other action on a particular date, such action shall be taken on the required date or as soon as practicable thereafter.

13

8.16    Exculpation.    Neither the Debtor, nor any of its respective attorneys, consultants, advisors, and agents (acting in such capacity), shall have or incur any liability to any entity for any act taken or omitted to be taken in connection with the initiation of the Debtor's Chapter 11 case, its prosecution, and in the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the provisions of this Section not affect the liability of any entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct. Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

The Debtor, holders of allowed secured claims against the Debtor, its landlord, and its current and former principals, agents, attorneys, representatives, employees, officers, members, directors, shareholders, successors, predecessors, assigns, and any other person acting on its behalf, including, but not limited to, Binnie, Carlisle (and any agent or representative thereof), and Gary Boisvert, shall not have any liability to any party-in-interest for any acts or omissions that could have been the basis of causes of action asserted by the Committee.

Nothing in this section, or otherwise, releases the Debtor or any other party from any obligation required under the Plan, including payment obligations.

8.17    Exemption from Transfer Taxes.    Pursuant to § 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the execution, delivery and recording of any deeds, bills of sale or assignments executed in connection with any disposition of assets under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

8.18    Binding Effect.    Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor and its respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan. The rights, benefits and obligations of any entity named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity (including, but not limited to, any trustee appointed for the Debtor under chapters 7 or 11 of the Bankruptcy Code).

8.19    Severability.    In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent

practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

8.20    <u>Headings</u>.  Headings are utilized in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

8.21    <u>Plan Controls</u>.  To the extent that the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

Dated:  September 21, 2020               **STURBRIDGE YANKEE WORKSHOP CORPORATION**
Debtor and Debtor-in-Possession

By: _/s/George J. Marcus_
George J. Marcus
David C. Johnson

Attorneys for the Debtor

MARCUS | CLEGG
16 Middle Street
Suite 501
Portland, ME 04101
207.828.8000